**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010 | TEL 212-849-7000 FAX 212-849-7100

<u>VIA HAND DELIVERY</u>

June 20, 2014

Hon. Richard J. Sullivan
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street, Room 640
New York, New York 10007

Re:     **Lehman Brothers Holdings Inc., et al. v.**
        **JPMorgan Chase Bank, N.A., Case No. 11-cv-06760**

Dear Judge Sullivan:

        We are counsel to the Official Committee of Unsecured Creditors of Lehman Brothers
Holdings Inc. ("LBHI") in the above-captioned matter against JPMorgan Chase Bank, N.A.
("JPMorgan").  We write on behalf of the Committee and LBHI (together, "Plaintiffs") in
response to JPMorgan's letter of June 17, 2014, requesting permission to (1) renew its motion to
withdraw the reference to the Bankruptcy Court (the "Withdrawal Motion"), and (2) submit a
motion for summary judgment on certain claims (the "SJ Motion").[1]

        This proceeding (the "Adversary Proceeding") against JPMorgan and other related
objections Lehman filed to derivatives and clearing claims[2] arise from JPMorgan's attempt to
apply cash and collateral it extracted from Lehman during the final four business days of
Lehman's existence to improperly inflated claims it filed against the bankruptcy estates.  Prior to
the bankruptcy, JPMorgan used its life-or-death leverage as Lehman's primary clearing bank to
force Lehman to hand over $8.6 billion of desperately needed cash as excess collateral.

---

        [1]  Plaintiffs are cognizant of the Court's three-page limit on letters but respectfully
request a reprieve to respond to the six-page letter JPMorgan filed regarding two motions.

        [2]  *See* First Amended Complaint and Objection to Claim Nos. 66451, 66453, 66454,
66455, 66462, 66470, 66472, 66473, 66474, and 66476, *Lehman Bros. Holdings Inc. v.
JPMorgan Chase Bank, N.A.*, Adv. Proc. 12-01874 (Bankr. S.D.N.Y. November 16, 2012) (Dkt
No. 9) ("Derivatives Objection"); Objection to Portions of Proofs of Claim No. 66462 Against
Lehman Brothers Holdings Inc. and No. 4939 Against Lehman Brothers Inc. of JPMorgan Chase
Bank, N.A. Regarding Triparty Repo-Related Losses, *In re Lehman Bros. Holdings Inc.*, Case
No. 08-13555 (Bankr. S.D.N.Y. Aug. 31, 2011) (Dkt No. 20723) ("Clearing Objection").

JPMorgan had no existing exposure to Lehman then—a fact corroborated by JPMorgan's contemporaneous internal assessments showing JPMorgan was substantially *over*-collateralized with respect to any potential credit exposure to Lehman.  Rather, JPMorgan acted to create an $8.6 billion fund of excess cash—which one JPMorgan witness called a "movable feast."  By draining Lehman of virtually all its remaining liquidity by Friday, September 12, 2008, JPMorgan left Lehman with insufficient cash to open its doors the next business day.  On Monday, September 15, 2008, Lehman had no choice but to seek chapter 11 protection.  After Lehman's bankruptcy filing, JPMorgan purported to apply its newly-minted fund against a host of bankruptcy claims (most notably the derivatives and clearing claims) that JPMorgan dramatically inflated to justify keeping that cash.

Three significant litigations subsequently were initiated in, and remain pending before, the Bankruptcy Court:  (1) this Adversary Proceeding (wherein Lehman seeks to avoid the cash and one-sided agreements JPMorgan extracted on the eve of bankruptcy); (2) the Derivatives Objection to $2.3 billion in derivatives claims; and (3) the Clearing Objection (challenging multi-billion dollar claims relating to JPMorgan's clearing activity).  The Derivatives and Clearing Objections are inextricably tied to the facts and allegations underlying the Adversary Proceeding.  *See* Deriv. Obj. at 2-3 (¶¶ 1-2) (alleging "[a]ll the while, [JPMorgan's] eyes were trained on an $8.6 billion slush fund of excess cash collateral that it extracted from Lehman the week prior to bankruptcy, which it planned to use to ensure a 100 percent recovery on its contrived claims .... JPMorgan's pattern of fabricating losses as a cover for its profiteering scheme is nowhere better exemplified than in JPMorgan's derivatives claims."); at 6-7 (¶ 8) ("As explained in the [Adversary Proceeding complaint] ... JPMCB improperly used [its leverage] … to extract $8.6 billion … from LBHI under the cover of a guaranty and security agreement .... JPMorgan was uniquely motivated to claim a $2.3 billion swing in its favor instead of submitting properly calculated termination amounts that would show the Lehman subsidiaries were in-the-money on a net basis under these contracts at all times and there was no relationship between the $8.6 billion demand and the parties' derivatives transactions.").

Bankruptcy Judge Shelley C. Chapman took over the entire Lehman docket from former Bankruptcy Judge James Peck when he retired in January 2014 and now presides over all litigation involving JPMorgan—along with virtually all other Lehman-related litigation and claims objections.  Regardless of where the Adversary Proceeding is heard, a significant portion of the ongoing litigation between Lehman and JPMorgan, *i.e.*, the Derivatives and Clearing Objections, will remain before the Bankruptcy Court because the Bankruptcy Court will adjudicate those two core proceedings to final judgment along with Lehman's objections to similar claims filed by other counterparties and creditors.

JPMorgan now insists, for the second time, that the Adversary Proceeding should be taken away from the Bankruptcy Court and that motions for summary judgment should be heard in the first instance by this Court.  That request runs counter to the prevailing practice in this District generally and recent decisions in other cases involving Lehman (including this Court's own ruling in *FHLB Cincinnati*) – all of which confirm that the appropriate allocation of labor between bankruptcy courts and district courts post-*Stern* remains the same, *i.e.*, the bankruptcy court to assist the district court by initially hearing and deciding summary judgment motions, even with respect to claims that can only be finally adjudicated in the district court.  Unless and

until this Court grants the Withdrawal Motion (which Plaintiffs respectfully submit it should not do at this stage), the Adversary Proceeding will continue before the Bankruptcy Court.  Plaintiffs therefore submit the Bankruptcy Court has the current responsibility, in the first instance, to (1) decide whether summary judgment motions should be filed pursuant to the relevant Local Rule of Bankruptcy Procedure 7056-1 and (2) decide any such motions.  *See* Fed. R. Bankr. P. 5011(c); *cf. In re Residential Capital, LLC*, 488 B.R. 565, 568 & n.2 (Bankr. S.D.N.Y. 2013) ("[t]he pendency of the motion to withdraw the reference does not affect the jurisdiction of this court to act [on pending remand motion].").

**Motion to Withdraw the Reference.**  The relevant considerations that led this Court to reject JPMorgan's prior attempt to show "cause" for permissive withdrawal under 28 U.S.C. § 157(d) remain unchanged.  The Second Circuit's *Orion* factors still weigh decidedly in favor of denying any Withdrawal Motion at this stage.

JPMorgan recycles its earlier argument that limitations on the Bankruptcy Court's constitutional authority to enter final orders with respect to certain claims provide a "sound" basis for withdrawal of the reference.[3]  But whether the Bankruptcy Court has final adjudicative authority over claims is ***not*** dispositive.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 58 (S.D.N.Y. 2013) ("Multiple courts in this District have already concluded that, although *Stern* prevents the Bankruptcy Court from entering final judgment on [certain matters], considerations of efficiency and uniformity counsel in favor of permitting the Bankruptcy Court to issue proposed findings of fact and conclusions of law."); *Weisfelner v. Blavatnik*, 467 B.R. 712, 723 (S.D.N.Y. 2012) ("The bankruptcy court's authority to enter final judgment on claims is not determinative in deciding whether to withdraw the reference . . . .").

Plaintiffs' remaining claims consist of "(1) claims seeking relief under various common law legal doctrines, (2) claims seeking to avoid and recover actual fraudulent transfers … and (3) claims seeking relief under various sections of the Bankruptcy Code." *Lehman Brothers Holdings Inc. v. JPMorgan Chase Bank, N.A.*, 480 B.R. 179, 186-87 (S.D.N.Y. 2012).  The Bankruptcy Court can enter either proposed findings or final orders with respect to all of them even if "it otherwise lacks the constitutional authority to enter final judgment." *Id. at* 194.  The Supreme Court recently confirmed the practice set forth by this Court's Standing Order (12 Misc. 32). *See Exec. Benefits Ins. Agency v. Arkison*, No. 12-1200, 2014 WL 2560461 at *4 (U.S. June 9, 2014) (finding that with respect to so-called "*Stern* claims," *i.e.*, claims statutorily "core" under 28 U.S.C. § 157(b)(2) but not "constitutionally" core because they involve a state-created private right, "the proper course is to issue proposed findings of fact and conclusions of law.  The district court will then review the claim *de novo* and enter judgment.").

JPMorgan asserts it would make "little sense" for the Bankruptcy Court to initially decide the SJ Motion.  But that process properly reflects the division of labor between bankruptcy courts

---

[3]  JPMorgan could consent to the entry of a final order but refuses to do so. *See Lehman Bros. Special Fin. Inc. v. Federal Home Loan Bank of Cincinnati*, No. 13-4121 , slip op. at 5 (S.D.N.Y. Mar. 17, 2014) ("If FHLB were truly worried about multiple rounds of litigation, it could simply consent as well and avoid the need for duplication.").

and district courts expressly designed by Congress. Nothing in *Stern* was intended to change that allocation of labor. *Id.* at *8 n.8 ("[W]e noted in *Stern* that the removal of claims from core bankruptcy jurisdiction does not 'meaningfully change the division of labor in the current statute.' Accepting EBIA's contention that district courts are required to hear all *Stern* claims in the first instance would dramatically alter the division of responsibility set by Congress.").

Nor is there any inefficiency caused by the Bankruptcy Court's entry of proposed findings because the SJ Motion can only be granted (by definition) if there is no disputed material fact and entitlement to judgment as a matter of law is shown. Accordingly, the standard of review will be *de novo* regardless of the Bankruptcy Court's constitutional authority to enter a final order. *Id.* at *9 ("The District Court conducted *de novo* review of the summary judgment claims, concluding . . . there were no disputed issues of material fact and that the trustee was entitled to judgment as a matter of law . . . EBIA thus received the same review from the District Court that it would have received if the Bankruptcy Court had treated the fraudulent conveyance claims as non-core proceedings under § 157(c)(1).").

Moreover, having the Bankruptcy Court enter proposed findings on the SJ Motion would provide a helpful starting point for the District Court. *See Lehman Brothers Holdings Inc. v. Intel Corp.*, No. 14-293 (JGK), 2014 WL 1877937 at *3 (S.D.N.Y. May 10, 2014) (a summary judgment "decision by the Bankruptcy Court would be helpful to the Court and review by the District Court could hardly be characterized as separate and additional litigation"); *See Lehman Brothers Holdings Inc. v. Ford Global Treasury, Inc.*, No. 12-8201 (RA) (S.D.N.Y. Apr. 8, 2013) (Docket No. 7) (order denying withdrawal motion: "experience strongly suggests that having the benefit of a report and recommendation will save the district court and the parties an immense amount of time.") (citation omitted); *In re Extended Stay, Inc.*, 466 B.R. 188, 207 (S.D.N.Y. 2011) ("[T]he bankruptcy court's proposed findings of fact and conclusions of law will narrow the issues to be resolved by this Court.").

Indeed, the Bankruptcy Court's initial decision will prove especially useful in a case as complex as *Lehman*. To that end, the Bankruptcy Court brings a strong familiarity with the facts and circumstances surrounding the Lehman cases. *See Intel Corp.*, 2014 WL 1877937, at *4 ("The Bankruptcy Court's resolution of any motion for summary judgment, or any decision by the bankruptcy court based on the documentary record, will be very useful to the District Court given the Bankruptcy Court's experience with the Lehman bankruptcies and related adversary proceedings involving swap agreements and derivative-based claims.").

JPMorgan argues that Judge Peck's retirement alters this conclusion and that Judge Chapman has not gained the same level of understanding (or exposure with respect to this particular proceeding). But just last month, in an adversary proceeding related to Lehman's chapter 11, Judge Koetl flatly rejected that argument. *Id.* ("[Even though] Judge Peck retired at the beginning of this year … [Judge] Chapman, who is currently overseeing the Lehman bankruptcy case, will be required to acquire the same familiarity with the LBHI and LOTC bankruptcies and other debtor-related adversary proceedings like this one. Given the complexity of the LBHI and LOTC bankruptcies, the litigation in this pending adversary proceeding that has already occurred in the Bankruptcy Court, and the Bankruptcy Court's ongoing experience with similar cases, concernss about litigating twice are unfounded.").

Judge Chapman will oversee the Derivatives and Clearing Objections, and billions of dollars in similar claims asserted by other creditors,[4] regardless of where the Adversary Proceeding is tried. Uniformity of bankruptcy administration, even within cases, is important and militates in favor of the same court overseeing a wide range of the litigation relating to the Lehman bankruptcy. *See id.* at \*4 ("Courts in this District have also emphasized intra-case uniformity, and concluded in analogous contexts that because the Lehman bankruptcy involves numerous disputes involving derivatives contracts, uniformity is clearly served by leaving all those disputes in the hands of a single court.") (citation omitted).

Similarly, Judge Chapman has considerable expertise on bankruptcy matters that lie at the heart of this litigation and will prove helpful informing the District Court's review, including not only claims based directly on the Bankruptcy Code—such as Plaintiffs' claims for violation of the automatic stay (which traditionally are the province of the bankruptcy court), actual fraudulent conveyance, improvement of position, and equitable subordination—but also common law claims that are frequently invoked to remedy abuses in the bankruptcy context. *See Lehman Brothers Special Fin. Inc. v. Federal Home Loan Bank of Cincinnati*, No. 13 Civ. 4121 (RJS), slip op. at 4 (S.D.N.Y. March 17, 2014) ("This district is blessed with an exceptionally strong bankruptcy bench, and the Court has no doubt that the bankruptcy court's proposed findings will greatly enhance the Court's ultimate analysis in this matter."); *cf. In re Ionosphere Clubs Inc.*, 124 B.R. 635, 638 (S.D.N.Y. 1991) (noting that because "[e]nforcement of the automatic stay is essential to orderly and equitable administration of the estate . . . suits by the trustee to prosecute violations of the automatic stay are within the jurisdiction of the Bankruptcy Court.").[5]

Contrary to JPMorgan's assertions, a jury demand is not dispositive on the issue of withdrawal. *See, e.g., Intel*, 2014 WL 1877937, at \*5 ("Courts have denied motions to withdraw a reference in cases involving legal claims *and* jury demands where they have found it would be more efficient for the Bankruptcy Court to handle pre-trial matters."); *In re Enron Power Mktg., Inc.*, No. 01 Civ. 7964, 2003 WL 68036 at \*11 (S.D.N.Y. Jan. 8, 2003) (declining to withdraw reference because bankruptcy court was "familiar with the salient issues in all the cases and [] far more able to supervise all of them together, unless and until a jury trial is necessary").[6]

---

[4]   *See, e.g., Lehman Brothers Holdings Inc., et al. v. Citibank, N.A., et al.* Adv. Proc. 12-1044 (SCC) (Bankr. S.D.N.Y.) (Dkt No. 43) (Second Amended Complaint and Claims Objection challenging, inter alia, nearly $2 billion in derivatives claims).

[5]   The cases cited by JPMorgan in support of its duplication argument are easily distinguished. *See Solutia Inc. v. FMC Corp.*, No. 04 Civ. 2842 (WHP) 2004 WL 1661115 (S.D.N.Y. July 27, 2004) (reviewing only non-core matters where there was no need for bankruptcy court expertise); *Geron v. Levine*, No. 11 Civ. 9101 (PAE) 2012 WL 310944 (S.D.N.Y. Feb. 1, 2012) (reviewing a *joint* motion from *both* parties requesting consensual withdrawal of the reference).

[6]   The case cited by JPMorgan does not counsel otherwise. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 472 (S.D.N.Y. 2011) (noting claims were not adjudicable by a bankruptcy court *at trial* and requiring jury trial before a district court).

**Motion for Summary Judgment**.  Plaintiffs will vigorously oppose the SJ Motion which, like JPMorgan's motion to dismiss, "is quite ambitious in scope and endeavors to preemptively dispose of all counts in Plaintiffs' First Amended Complaint," including the "complex and fact-driven causes of action" that Lehman will prove at trial.  *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A.*, 469 B.R. 415, 420 (Bankr. S.D.N.Y. 2012).

JPMorgan's assertion that Plaintiffs' claims "are aimed at stripping JPMorgan of cash and securities collateral" is at odds with the facts.  Far from "a host of ill-fitting legal theories," this litigation, as Judge Peck observed, presents "especially difficult [issues] that one day may help to define what constitutes acceptable conduct by major financial institutions during times of crisis."  469 B.R. at 421.  "[W]ith so much at stake ... a decision on the merits should occur after careful consideration of a full evidentiary record."  *Id.*  Based on a robust evidentiary record, Plaintiffs intend to show that JPMorgan's conduct in preying on Lehman when it was in a weakened state was the antithesis of how institutions should act under any circumstances, and gives rise to a multitude of claims that have already survived legal challenge.

JPMorgan had unparalleled access to inside information regarding Lehman's financial condition and future plans.  Armed with that information, JPMorgan demanded sweeping and unprecedented changes to its relationship with Lehman literally overnight by imposing new agreements and demanding excess collateral.  JPMorgan extracted these concessions as *faits accomplis* based on verbal and written threats that it would immediately cease to provide clearing services to Lehman, forcing Lehman into immediate bankruptcy.  While JPMorgan may dispute Plaintiffs' account of events, which is its right at trial, its reductionist effort to boil down a sea of evidence, including nearly 300 depositions and millions of pages of documents that give rise to 30 causes of action, into a pair of wildly one-sided over-generalizations for purposes of summary judgment utterly fails.

Plaintiffs intend to file their own motion for summary judgment, seeking affirmative relief on a discrete number of claims for which the facts are undisputed and only pure legal issues are presented, including, among others, Plaintiffs' claim that JPMorgan does not have a valid lien or any other rights with respect to $6.9 billion of LBHI funds that JPMorgan improperly transferred from LBHI's account to its own general ledger account prior to the bankruptcy.  Plaintiffs also intend to move to dismiss JPMorgan's counterclaims in their entirety, as JPMorgan failed to develop any factual basis to support those claims.  Plaintiffs will apply to the Bankruptcy Court for permission to file these motions.

For the reasons set forth above, Plaintiffs respectfully request that the Court deny JPMorgan's request to bring a Withdrawal Motion and submit that summary judgment motions in this matter should be filed with and decided by the Bankruptcy Court.

Respectfully submitted,

(AR)

Andrew J. Rossman

cc:   Hon. Shelley C. Chapman
      Joseph D. Pizzurro, Esq. (counsel to LBHI)
      Lynn Harrison 3rd, Esq. (counsel to LBHI)
      Paul Vizcarrondo, Esq. (counsel to JPMorgan Bank, N.A.)
      James C. Tecce, Esq. (counsel to Official Committee of Unsecured Creditors)