QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Telephone:  (212)-849-7000
Facsimile:  (212)-849-7100
*Attorneys for Plaintiff Intervenor*
*Official Committee of Unsecured Creditors*
*of Lehman Brothers Holdings Inc.*

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
101 Park Avenue
New York, NY  10178
Telephone:  (212)-696-6000
Facsimile:  (212)-697-1559
*Attorneys for Plaintiff Lehman Brothers Holdings Inc.*

WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019-6150
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
*Attorneys for Defendant JPMorgan Chase Bank, N.A.*

October 16, 2015

**BY E-MAIL AND ECF**

Hon. Richard J. Sullivan
United States District Judge
United States District Court
  for the Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

Re: Lehman Brothers Holdings Inc., et al. v.
JPMorgan Chase Bank, N.A., No. 11-cv-06760

Dear Judge Sullivan,

The parties write jointly in response to the Court's order of September 30, 2015 (the "Order"), regarding next steps in this action, including counsel's availability for trial and the prospects for settlement.

## I. <u>Next Steps</u>

<u>Plaintiffs' Position</u>:

The most efficient path to final resolution of the parties' claims is certification of Plaintiffs' dismissed causes of action for immediate appeal under Fed. R. Civ. P. 54(b).

*Background*

This Court and the Bankruptcy Court have now dismissed 43 of Plaintiffs' original 49 causes of action.  Judge Peck relied on 11 U.S.C. 546(e) to dismiss 20 claims sounding in constructive fraudulent transfer and preference under the Bankruptcy Code.  *See Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank N.A.*, 469 B.R. 415, 420, 451 (Bankr. S.D.N.Y. 2012).  This Court declined to review Judge Peck's decision.  *See* Dkt. # 99 (Dec. 8 2014).  Through the Order, this Court has now dismissed 23 of Plaintiffs' remaining causes of action, including Plaintiffs' central allegations that JPMorgan's wrongful conduct in forcing LBHI to provide $8.6 billion in cash collateral breached the parties' agreements, that those agreements were in any case invalid, that the transfers constituted actual fraudulent conveyances and that JPMorgan lost its lien on $6.9 billion of the collateral it demanded from LBHI on September 9 and 11, 2008 when it swept that cash into its own general ledger account without authorization.

The six remaining causes of action seek (i) avoidance of JPMorgan's collateral demands as an improper setoff or improvement of position under Sections 553(a)(3) and (b), and recovery of those wrongful transfers under Section 550 (Counts 26, 28, 29); (ii) equitable subordination of JPMorgan's claims against LBHI (Count 30); and (iii) a finding that JPMorgan violated the automatic stay by applying the collateral demanded for purported clearance exposure to LBI to other purported claims against Lehman entities, and the turnover of funds wrongfully applied (Counts 33 and 34).

For the reasons discussed below, neither the pendency of these claims, nor JPMorgan's counterclaims, should delay this Court in certifying the dismissed causes of action—which constitute the vast bulk of Plaintiffs' claims—for immediate appeal.

*Immediate Appeal Under Rule 54(b) is the Most Efficient Way to Resolve the Parties' Claims*

Rule 54(b) provides that "[w]hen an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay."  Fed. R. Civ. P. 54(b).  "[T]he district court's 'proper guiding star' in determining whether to grant a Rule 54(b) motion is 'the interest of sound judicial administration.'" *Burrell v. State Farm & Cas. Co.*, 226 F. Supp. 2d 427, 433 (S.D.N.Y. 2002) (quoting *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 8 (1980)).[1]

---

[1] *See also Bristol Tech., Inc. v. Microsoft Corp.*, 127 F. Supp. 85, 90 (S.D.N.Y. 2000) (54(b) certification is appropriate "'where there are interest[s] of sound judicial administration and efficiency to be served.'") (quoting *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1025 (2d Cir. 1992)).

Plaintiffs' appeal of the claims dismissed both by this Court, and the Bankruptcy Court, is both inevitable and likely to hasten the ultimate resolution of this case. Trial of the remaining claims can neither afford Plaintiffs complete relief on their complaint nor will it dispose of the dismissed claims as a factual matter. Thus, trial of these six limited claims will not obviate the need for an appeal of all the others. By contrast, an appeal of the dismissed claims at this stage is likely to have a dramatic impact on trial of the remaining claims. If the Second Circuit ultimately finds the parties should have proceeded to trial on Plaintiffs' central claims, including fraudulent transfer, breach of the parties' contracts, coercion, or loss of JPMorgan's lien on $6.9 billion in collateral, any result from a trial at this stage on the remaining claims would almost certainly be vacated or dramatically modified as a result, necessitating a second trial on those same claims.

For instance, if the Second Circuit reinstates causes of action for breach and/or invalidity of the September Agreements or the loss of JPMorgan's lien, any claims tried now on the premise that those agreements or that lien are valid would need to be retried (along with reinstated claims) to account for the possibility that the September Agreements may be found to be invalid. Similarly, the Order determined that LBHI's sole basis for equitable subordination is a finding of "voidable preferences" arising from the remaining causes of action. Order at 28. If the Second Circuit revives any of Plaintiffs' dismissed claims for actual fraudulent conveyance, duress, coercion, equitable subordination (based on pre-petition conduct), or others alleging wrongful and inequitable conduct, however, LBHI would have multiple bases for equitable subordination, all of which the Court will have to address in a redundant, second trial. More generally, there is no advantage to trying a limited subset of LBHI's claims for relief, since the Second Circuit might revive numerous additional bases for return of LBHI's collateral, making a trial on the limited subset a waste of judicial resources that would only further delay the ultimate resolution of the case. Moreover, because revival of certain of Plaintiffs' claims by the Second Circuit would create rights to a jury that do not exist on the remaining claims, Plaintiffs' success on appeal could require trials of the same fact issues before two different fact finders, creating the possibility of inconsistent determinations.

Given that a trial on the remaining claims would not dispose of the need for an appeal on the dismissed claims and any decision at trial on the remaining claims is likely to be vacated or modified substantially if any of the dismissed claims are reinstated by the Second Circuit's decision on appeal, necessitating a retrial on the same issues, certification under Rule 54(b) is the most efficient route to a total resolution of all of Plaintiffs' claims. *See, e.g., Amato v. Western Union Int'l*, 596 F. Supp. 963, 974 (S.D.N.Y. 1984) (certifying appeal under 54(b) where 11 of 15 claims were dismissed), *aff'd in part, rev'd in part on other grounds*, 773 F.2d 1402 (2d Cir. 1985); *Bristol Tech.*, 127 F. Supp. 2d at 90 (noting the District Court should consider the "relatedness of the pending and adjudicated claims," their "factual bases," and the effect a decision on remaining claims would have "on the questions raised on appeal.") (quoting *FDIC v. Bernstein*, 944 F. 2d 101, 108–09 (2d Cir. 1991)).

This is especially true here, where, contrary to JPMorgan's assertion below, the proposed trial of the remaining claims could extend well beyond a single day, and avoiding it would save the Court substantial time and resources. A trial of the automatic stay claim (Counts 33 and 34), for example, would require evidence of whether JPMorgan's setoff or seizure (without seeking leave of the Bankruptcy Court) of LBHI's cash to pay itself not on clearing claims for which it was intended, but instead on derivative claims was the exercise of a

contractual right that was consistent with industry customs and practices such that it is protected by the limited safe-harbor under Bankruptcy Code Section 362(a)(17).  *See, e.g.*, *In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 835 (Bankr. S.D.N.Y. 2010) ("[T]he automatic stay should not impact the exercise of a contractual right of setoff that is otherwise consistent with recognized customs and practices of market participants who engage in swap transactions").

   In fact, Plaintiffs would offer evidence of industry custom and practice, including the course of dealing of the parties, showing that the collateralization of derivatives transactions is customarily handled via entirely separate accounts and separate agreements and that the use of LBHI cash for that purpose was a marked departure from that settled practice.  This may involve, among other things, evidence from senior JPMorgan and former Lehman witnesses regarding both the intended purpose and subsequent use of the cash demanded, as well as course of dealing between the parties, and expert testimony on industry custom and practice regarding the collateralization of derivative trades.[2]  Contrary to JPMorgan's assertions, industry custom and practice is relevant to whether JPMorgan's actions constitute the exercise of a "contractual right" that is protected by section 362(b)(17) of the Bankruptcy Code.  *See*, *e.g.*, 11 U.S.C. § 560 (defining "contractual right" for purposes of section 362(b)(17) with reference to rights set forth by "a derivatives clearing organization" and a "national securities exchange," among others). The Second Circuit in *Enron* (cited by JPMorgan) addressed section 546 of the Bankruptcy Code, not section 362(b)(17).

   Moreover, a trial of LBHI's claims under section 553 of the Bankruptcy Code (Counts 26, 28, and 29) and the equitable subordination claim (Count 30) to the extent it rests on the section 553 claims would require evidence of whether JPMorgan acted with the impermissible purpose of improving its position via the exercise of a setoff.  That evidence could include testimony from, among other witnesses, high-level JPMorgan executives on the justifications for JPMorgan's cash demands—about which those executives testified inconsistently at their depositions.

   Plaintiffs disagree with JPMorgan's positions on a variety of issues relating to the length of trial necessary to decide the remaining claims.  Rather than fully briefing those questions in this joint letter, suffice to say that Plaintiffs believe the remaining issues will require more than a day-long trial and would be prepared to fully address such questions with the Court at the appropriate time.

   An immediate appeal would be more efficient if the Second Circuit affirms the Order as well.  In that case, the parties can more easily evaluate the remaining claims, which would no longer be subject to expansion by the reinstatement of related claims, and prospects for settling the case would be enhanced.  *United States v. Am. Soc'y of Composers, Authors & Publishers*, 782 F. Supp. 778, 818 (S.D.N.Y. 1991) (granting Rule 54(b) motion where "depending upon the final disposition of the [claim certified for appeal], it may well be the case that the second claim will never need to be adjudicated . . . .").  If necessary, the case could

---

[2] In granting summary judgment to JPMorgan on LBHI's claim that JPMorgan had no continuing lien over the $6.9 billion (Count 38), this Court relied upon the affidavit of Michael Mego submitted by JPMorgan.  *See* Dkt. # 100, at pp. 24-25 (9/30/15).  Although LBHI disputes Mr. Mego's statements, even those statements indicate that the cash was meant to be used for tri-party repo exposures, not for the $1.9 billion in purported derivatives claims to which JPMorgan applied them.

proceed to trial on the remaining claims without the concern that such trial could be mooted or dramatically altered by an appellate ruling on related claims that would require a retrial.

   Regardless of the Second Circuit's determination, an immediate appeal of the central claims that have already been adjudicated provides the most efficient path forward for resolving this case.  Plaintiffs therefore respectfully request that the Court find no just reason for delay and certify the dismissal of Counts 1, 3, 4, 25, 27, 31, 32, 35–42, and 46–49, for appeal under F.R.C.P. 54(b).

<em>If a Trial is Required, the Case Should be Referred Back to the Bankruptcy Court</em>

   To the extent a trial is conducted on the remaining claims, the Court can and should return the case to the Bankruptcy Court for trial, as the bases for withdrawing the reference are no longer present.  In June 2014, JPMorgan asked this Court to withdraw the reference in this case prior to Summary Judgment on the grounds that the Bankruptcy Court (1) lacked constitutional authority to finally adjudicate the majority of Plaintiffs' claims, and (2) the Bankruptcy Court is barred by statute from conducting a jury trial absent consent of both parties. *See* Letter from Paul Vizcarrondo, Jr., dated June 17, 2014, ECF No. 43.  Neither of these concerns is relevant to the remaining claims.

   The remaining claims are statutorily "core," and the Bankruptcy Court has constitutional authority to enter a final order as to those claims.  *See, e.g.*, *In re Calderon*, 497 B.R. 558, 565 (Bankr. E.D. Ark. 2013) (finding that claims for violation of the automatic stay are "so fundamental to our bankruptcy system . . . that they should, therefore, be viewed as 'public rights'"); *see also In re USDigital, Inc.*, 461 B.R. 276, 292 (Bankr. D. Del. 2011) (finding equitable subordination claim to be "a core proceeding under both the statute and the Constitution").  And JPMorgan does not have a jury trial right as to any of the remaining claims. *See, e.g.*, *In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927, 935 (Bankr. E.D.N.C. 1986) ("There is also no right to a jury trial with respect to the equitable subordination of a claim."); *In re Otasco, Inc.*, 110 B.R. 964, 967 (Bankr. N.D. Okla. 1990) ("Count 3 asks for equitable subordination. This is not only equitable in nature but arises under Title 11, is part of the claims-allowance-and-payment process which is the very essence of disposition of the bankruptcy estate, and is as 'core' as a proceeding could be; there can be no jury right as to this count either."); *see also Calderon*, 497 B.R. at 565 (finding that defendant was not entitled to a jury trial on claim that it violated the automatic stay).

   This District's standing order therefore applies, and the remaining claims should be referred back to the Bankruptcy Court.  *See* Amended Standing Order of Reference dated January 31, 2012, Reference M-431, *In re Standing Order of Reference Re: Title 11*, 12 Misc. 00032 (S.D.N.Y. Feb 2, 2012) (Preska, C.J.) ("Any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 are referred to the bankruptcy judges for this district.").  The Standing Order reflects this District's view that claims arising under title 11 should, absent circumstances not present here, be heard by the Bankruptcy Court, and the Supreme Court's decision in *Stern* was not intended to "meaningfully change[] the division of labor in the current statute."  *Stern v. Marshall*, 131 S. Ct. 2594, 2599 (2011); *see also Adelphia Recovery Trust v. FLP Grp., Inc.*, No. 11 Civ. 6847(PAC), 2012 WL 264180, at *8 (S.D.N.Y. Jan. 30, 2012) (noting the intent of Congress "that bankruptcy courts [] have broad authority to hear 'core' matters").

5

Indeed, the District Court for the Northern District of Ohio re-referred a case to bankruptcy court when faced with similar circumstances. *Official Comm. of Unsecured Creditors of PHD, Inc. v. Bank One, NA*, No. 1:03CV2466, 2004 WL 3721325, at *6-7 (N.D. Ohio Apr. 23, 2004), *on reconsideration in part* (Oct. 24, 2005) (noting that "[t]his court today dismisses many of the Committee's 'arguably noncore' common law claims" and referring the remaining core claims back to bankruptcy court). A Court in this District also recently returned portions of a case to the Bankruptcy Court after dismissing non-core claims. *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 513 B.R. 222, 232 (S.D.N.Y. 2014) *supplemented*, 2014 WL 3778155 (S.D.N.Y. July 28, 2014) ("The Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . ."). If JPMorgan insists on a trial and the Court determines a trial is more appropriate than granting relief under Rule 54(b), this Court should direct that any trial on the remaining, core claims be conducted by Bankruptcy Judge Chapman.

Finally, there is no need for a trial on JPMorgan's counterclaims at this time. JPMorgan's fraud-based counterclaims are expressly contingent on LBHI receiving some relief on its affirmative claims. Furthermore, certain of LBHI's dismissed affirmative claims clearly reflect willful misconduct by JPMorgan and, if revived by the Second Circuit, could render moot any immediate adjudication of the indemnity claim in JPMorgan's favor. It would therefore be a waste of judicial resources to proceed with a trial on the indemnification claim for attorneys' fees at this time. Such a trial would require adjudication of whether the contractual indemnification provisions at issue apply under the circumstances. If found to apply, there would then have to be a trial on the amount at issue, which would necessarily involve a detailed examination of JPMorgan's billing statements to determine which of the fees and costs incurred by JPMorgan, if any, fall within the narrow scope of the indemnity, which must be strictly construed. *See Scott-Macon Securities, Inc. v. Zoltek Companies, Inc.*, No. 06-2711-cv, 2007 U.S. App. LEXIS 23356 at *16-18 (2d Cir. Oct. 4, 2007). Expert testimony would also be required to determine the reasonableness of any fees claimed by JPMorgan. Under these circumstances, Plaintiffs' respectfully submit that a trial on JPMorgan's indemnity claim should not proceed at this time.

JPMorgan's Position:

JPMorgan believes that, at most, a day-long trial will be needed to address the limited issues that remain after the Court's summary judgment decision. Specifically, the Court stated that it did not have "sufficient detail regarding the circumstances surrounding the alleged setoffs to permit the Court to determine whether those transactions — if they are in fact setoffs — were subject to the safe harbor." Decision and Order at 27.

The Court has already found that "in October 2008, JPMC applied approximately $1.9 billion from the $6.9 billion GL Cash Collateral Account to claims related to Lehman derivatives contracts, securities lending agreements, and repurchase agreements." *Id.* at 7. In the Amended Complaint, Plaintiffs identify each of the 13 transactions that gave rise to that $1.9 billion in claims, but allege that the transactions were not safe-harbored because they were not effected "pursuant to, and [were] not sufficiently related to, the derivatives contracts." Amended Complaint ¶ 268. The facts contradicting this naked allegation and confirming that these transactions were, in fact, effected pursuant to contractual rights contained in securities contracts, repurchase agreements, forward contracts and/or swap agreements that are subject to safe harbor protection are straightforward and uncontroversial, and JPMorgan had hoped that they could be

6

stipulated to by the parties.  As Plaintiffs will not stipulate, a short trial to provide the evidence of the safe-harbored character of each of the transactions and the contractual terms governing the collateral will be required.

        The Court will not need to address any of the wide-ranging issues Plaintiffs raise, such as custom and practice with respect to the collateralization of derivative transactions.  The law in the Second Circuit is stated very plainly in *Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329 (2d Cir. 2011), a case decided subsequent to the *Lehman* decision authored by Judge Peck upon which Plaintiffs rely (*In re Lehman Bros. Holdings Inc.*, 439 B.R. 811, 835 (Bankr. S.D.N.Y. 2010)).  The *Enron* court unequivocally rejected an interpretation of a Bankruptcy Code safe harbor that "would make application of the safe harbor in every case depend on a factual determination regarding the commonness of a given transaction," finding that such inquiries would result in uncertainty and unpredictability at odds with the safe harbor's purpose.  *Enron*, 651 F.3d at 336; *accord Mich. State Hous. Dev. Auth. v. Lehman Bros. Derivative Prods. Inc. (In re Lehman Bros. Holdings Inc.)*, 502 B.R. 383, 393-94 (Bankr. S.D.N.Y. 2013) (Peck, J.) (enforcing section 560 safe harbors according to their "plain language" in order "to provide stability and certainty to the markets").  And contrary to Plaintiffs' assertion, the plain terms of the safe harbors do not require that a secured party's conduct conform to any extra-statutory standard defined by industry customs.  *See, e.g.*, 11 U.S.C. § 560 (protecting exercise of a "contractual right" under a swap agreement, and defining "contractual right" to include "a right, whether or not evidenced in writing, arising under common law, under law merchant, *or* by reason of normal business practice" (emphasis added)).

        Accordingly, in this case, a simple showing that the literal terms of the safe harbor provisions are satisfied will dispose of Counts 26, 28, 29, 33 and 34.  And if JPMorgan is successful on those counts, Count 30 (requesting equitable subordination) would be resolved as well.  *See* Decision and Order at 28 ("Here, as discussed above, the Court denied summary judgment to Defendant with respect to Plaintiffs' claims alleging voidable preferences under the bankruptcy code.  Accordingly, Defendant's request for summary judgment on Count 30 requesting equitable subordination is also denied.").[3]

        If Plaintiffs' remaining claims are disposed of, JPMorgan's counterclaims are also disposed of, save for its claims for indemnification of legal fees and expenses.  Plaintiffs' position that determination of JPMorgan's entitlement to indemnification must await its appeal to the Second Circuit is without basis.  *See, e.g.*, *Scanner Techs. Corp. v. Icos Vision Sys. Corp., N.V.*, No. 00-4992, 2007 WL 3284028, at *2 (S.D.N.Y. Nov. 1, 2007) (Chin, J.) (district court need not "await the resolution of the appeal" to "decide the issue of attorneys' fees and related costs").  If the case has been resolved in JPMorgan's favor by this Court, Lehman's indemnification obligation arises.  *See* Clearance Agreement at 17 ("we shall be indemnified for all reasonable costs and expenses, including reasonable attorneys' fees, *for our successful defense against claims by you that we were negligent or engaged in willful misconduct*.") (emphasis added).  Determination of the amount of reasonable costs and expenses, including

---

[3] Regardless of the disposition of Count 30, the Collateral Disposition Agreement, which is a court-ordered settlement agreement entered into between the parties in 2010, should preclude any recovery against JPMorgan based on equitable subordination of its claims.

attorneys' fees, will simply require JPMorgan to submit evidence of the fees and expenses it has incurred and the reasonableness thereof for the Court's review.

        With respect to Plaintiffs' twin requests to proceed immediately to the Court of Appeals on the dismissed counts and to the Bankruptcy Court on the few remaining counts, JPMorgan will be happy to provide the Court with full briefing on these matters if the Court so wishes. For current purposes, suffice it to say that JPMorgan does not believe that Plaintiffs can make the requisite showing that there is "no just reason" to delay adjudication of the remaining counts, so as to treat the partial dismissals of the complaint as final judgments under Rule 54(b). Plaintiffs must show that delay "will cause unusual hardship or work an injustice." *Hogan v. Consol. Rail Corp.*, 961 F.2d 1021, 1026 (2d Cir. 1992). A concern about the possibility of multiple trials does not satisfy this standard. *See id.* ("To deem sufficient under Rule 54(b) a finding simply that an immediate appeal might avoid the need for a retrial . . . could only contravene the federal policy against piecemeal appeals.").

        Similarly, JPMorgan does not believe that Plaintiffs' claims of improper setoff under Bankruptcy Code section 553 — which, as pleaded, seek to avoid and recover transfers — are subject to final adjudication by the Bankruptcy Court. *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 192 (S.D.N.Y. 2012) ("[B]ecause Plaintiffs' claims to avoid and recover transfers are intended to 'augment the estate' rather than to obtain a *pro rata* share of the bankruptcy *res*, the bankruptcy court cannot finally adjudicate them.") (citation omitted). In any event, it is within this Court's discretion to decide whether to refer the case back to the bankruptcy court. At this point, this Court has far greater familiarity than Bankruptcy Judge Chapman (who took over the Lehman cases from Judge Peck) with the facts of this case and the remaining claims that were presented to the Court on summary judgment, and can expeditiously bring the case to a conclusion.

## II.   <u>Availability for Trial</u>

        The parties will be available at the Court's convenience.

## III.   <u>Prospects for Settlement</u>

        The parties anticipate settlement discussions, but it is too early to assess the prospects for success.

*      *      *

        The parties are available at the Court's convenience to discuss the foregoing.

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By   */s/ Andrew J. Rossman*
  Andrew J. Rossman

  *Counsel for Plaintiff Intervenor the Official*
  *Committee of Unsecured Creditors of Lehman*
  *Brothers Holdings Inc.*


CURTIS, MALLET-PREVOST, COLT & MOSLE
LLP


By   */s/ Joseph D. Pizzurro*
  Joseph D. Pizzurro

  *Counsel for Plaintiff Lehman Brothers*
  *Holdings Inc.*


WACHTELL, LIPTON, ROSEN & KATZ


By   */s/ Paul Vizcarrondo, Jr.*
  Paul Vizcarrondo, Jr.

  *Counsel for Defendant JPMorgan Chase Bank,*
  *N.A.*