## Wachtell, Lipton, Rosen & Katz

51 WEST 52ND STREET
NEW YORK, N.Y. 10019-6150
TELEPHONE: (212) 403-1000
FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)
LEONARD M. ROSEN (1965-2014)

MARTIN LIPTON
HERBERT M. WACHTELL
PAUL VIZCARRONDO, JR.
PETER C. HEIN
HAROLD S. NOVIKOFF
MEYER G. KOPLOW
THEODORE N. MIRVIS
EDWARD D. HERLIHY
DANIEL A. NEFF
ANDREW R. BROWNSTEIN
MICHAEL H. BYOWITZ
PAUL K. ROWE
MARC WOLINSKY
DAVID GRUENSTEIN
STEVEN A. ROSENBLUM
STEPHANIE J. SELIGMAN
JOHN F. SAVARESE
SCOTT K. CHARLES
JODI J. SCHWARTZ
ADAM O. EMMERICH
GEORGE T. CONWAY III

RALPH M. LEVENE
RICHARD G. MASON
MICHAEL J. SEGAL
DAVID M. SILK
ROBIN PANOVKA
DAVID A. KATZ
ILENE KNABLE GOTTS
DAVID M. MURPHY
JEFFREY M. WINTNER
TREVOR S. NORWITZ
BEN M. GERMANA
ANDREW J. NUSSBAUM
RACHELLE SILVERBERG
STEVEN A. COHEN
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JOSEPH D. LARSON
LAWRENCE S. MAKOW

OF COUNSEL

WILLIAM T. ALLEN
PETER C. CANELLOS
DAVID M. EINHORN
KENNETH B. FORREST
THEODORE GEWERTZ
MAURA R. GROSSMAN
RICHARD D. KATCHER
DOUGLAS K. MAYER
ROBERT B. MAZUR
PHILIP MINDLIN
ROBERT M. MORGENTHAU

DAVID S. NEILL
BERNARD W. NUSSBAUM
LAWRENCE B. PEDOWITZ
ERIC S. ROBINSON
PATRICIA A. ROBINSON*
ERIC M. ROTH
MICHAEL W. SCHWARTZ
ELLIOTT V. STEIN
WARREN R. STERN
PATRICIA A. VLAHAKIS
AMY R. WOLF

* ADMITTED IN THE DISTRICT OF COLUMBIA

COUNSEL

DAVID M. ADLERSTEIN
AMANDA K. ALLEXON
LOUIS J. BARASH
DIANNA CHEN
ANDREW J.H. CHEUNG
PAMELA EHRENKRANZ
KATHRYN GETTLES-ATWA
ADAM M. GOGOLAK

PAULA N. GORDON
NANCY B. GREENBAUM
MARK A. KOENIG
J. AUSTIN LYONS
ALICIA C. McCARTHY
SABASTIAN V. NILES
AMANDA N. PERSAUD
JEFFREY A. WATIKER

JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
STEPHEN R. DiPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES
T. EIKO STANGE
DAVID A. SCHWARTZ
JOHN F. LYNCH
WILLIAM SAVITT
ERIC M. ROSOF
MARTIN J.E. ARMS
GREGORY E. OSTLING
DAVID B. ANDERS
ANDREA K. WAHLQUIST
ADAM J. SHAPIRO
NELSON O. FITTS
JOSHUA M. HOLMES
DAVID E. SHAPIRO
DAMIAN G. DIDDEN
ANTE VUCIC

IAN BOCZKO
MATTHEW M. GUEST
DAVID E. KAHAN
DAVID K. LAM
BENJAMIN M. ROTH
JOSHUA A. FELTMAN
ELAINE P. GOLIN
EMIL A. KLEINHAUS
KARESSA L. CAIN
RONALD C. CHEN
GORDON S. MOODIE
DONGJU SONG
BRADLEY R. WILSON
GRAHAM W. MELI
GREGORY E. PESSIN
CARRIE M. REILLY
MARK F. VEBLEN
VICTOR GOLDFELD
EDWARD J. LEE
BRANDON C. PRICE
KEVIN S. SCHWARTZ

October 30, 2015

<u>BY E-MAIL AND ECF</u>

Hon. Richard J. Sullivan
United States District Judge
United States District Court
   for the Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

Re: Lehman Brothers Holdings Inc., et al. v.
<u>JPMorgan Chase Bank, N.A., No. 11-cv-06760</u>

Dear Judge Sullivan:

We write as counsel to defendant JPMorgan Chase Bank, N.A. ("JPMorgan") to set forth, as the Court directed in its October 23 Order [D.I. 102], the bases for our position that the bankruptcy court lacks constitutional authority to adjudicate plaintiffs' claims under section 553 of the Bankruptcy Code (the "Section 553 Claims").

Wachtell, Lipton, Rosen & Katz

Hon. Richard J. Sullivan
October 30, 2015
Page 2

As the Supreme Court held in *Stern v. Marshall*, a litigant in a federal proceeding is *presumed* to have a right to adjudication by an Article III judge, and this presumption is overcome only in "limited circumstances."  131 S. Ct. 2594, 2618 (2011).  In the bankruptcy context in particular, such circumstances are present only when:  (1) the claim is a matter of "public right"; (2) the claim would necessarily be resolved in ruling on a creditor's proof of claim; or (3) the parties unanimously consent to final adjudication by a non-Article III tribunal. *E.g.*, *In re Lyondell Chem. Co.*, 467 B.R. 712, 720 (S.D.N.Y. 2012).  JPMorgan has not consented to final adjudication of the Section 553 Claims (or any other claims) in the bankruptcy court; thus, those claims must be finally adjudicated in this Court unless one of the first two conditions is met.  Neither is.

Following *Stern* and other Supreme Court precedent, courts in this District have reached "consensus" that the right of a bankruptcy estate "to recover a fraudulent or preferential conveyance is more accurately characterized as a private rather than a public right."  *Nisselson v. Salim*, 2013 WL 1245548, at *4 (S.D.N.Y. Mar. 25, 2013) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 55 (1989) (internal quotation marks and alterations omitted)).  Thus, "the Bankruptcy Court may not ordinarily enter final judgment on avoidance claims."  *Id.* (quoting *Sec. Investor Protection Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 2013 WL 67605, at *1 (S.D.N.Y. Jan. 4, 2013) (internal quotation marks omitted)).  In ruling on JPMorgan's motion to withdraw the reference in this action, this Court reached the same conclusion.  Addressing plaintiffs' claims seeking to avoid and recover transfers under the Bankruptcy Code, the Court held that those claims "were more properly characterized as a 'private' rather than 'public'

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Richard J. Sullivan
October 30, 2015
Page 3

right," because they "are intended to 'augment the estate' rather than to obtain a *pro rata* share of the bankruptcy *res.*" *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 189, 192 (S.D.N.Y. 2012) (quoting *Stern*).

      The Section 553 Claims that plaintiffs have asserted are no different:  they seek to recover, for the benefit of Lehman's estate, the very same cash collateral that was the subject of the numerous preference, fraudulent transfer, and common law claims that have already been dismissed or disposed of on summary judgment.  The Section 553 Claims are just one more iteration of avoidance claims seeking to claw back JPMorgan's pre-petition collateral on the basis that it allowed JPMorgan to do better than if the collateral had never been received — *i.e.*, that JPMorgan was "preferred."  *See, e.g.*, Am. Compl. [D.I. 3-1] ¶ 249 ("JPMorgan is liable for the amount by which the September Transfers enabled it to improve its credit position with respect to LBHI in the ninety (90) days preceding the Petition Date."); ¶ 251 ("The September Transfers are avoidable as impermissible improvements in position . . . and accordingly . . . LBHI is entitled to recover from JPMorgan the value of the September Transfers . . . for the benefit of LBHI's estate."); *see also* Sept. 30 Order [D.I. 100] at 26 ("Plaintiffs claim that . . . the September Transfers should be avoided as wrongful transfers.").  Thus, no different from any of plaintiffs' other claims that have been resolved in JPMorgan's favor to date, the Section 553 Claims seek to augment the Lehman bankruptcy estate by clawing back the collateral provided to JPMorgan pre-petition, and are not matters of "public" right that can be finally adjudicated by a non-Article III court.  *See Penson Fin. Servs., Inc. v. O'Connell (In re Arbco Capital Mgmt.,*

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Richard J. Sullivan
October 30, 2015
Page 4

*LLP)*, 479 B.R. 254, 266 (S.D.N.Y. 2012) ("[A] preference defendant is entitled to have its claim

finally adjudicated by an Article III judge.").

        As this Court further held in its 2012 opinion, in order for the bankruptcy court to

have adjudicatory authority, plaintiffs must "demonstrate that each factual and legal element of

[their] claim will be decided in the claims allowance process." 480 B.R. at 190. The Section

553 Claims will not "necessarily be resolved" by the bankruptcy court in ruling on JPMorgan's

proofs of claim against the Lehman estate.[1] The Court denied summary judgment on those

claims because it did not have the necessary "detail regarding the circumstances surrounding the

alleged setoffs" to determine whether they were "in fact setoffs," and whether, if so, they were

legally and factually "subject to the safe harbor" for setoff transactions. Sept. 30 Order [D.I.

100] at 27; *see* 11 U.S.C. § 553(a), (b) (providing express safe harbors for setoffs related to

swaps, repurchase agreements, and securities contracts). As JPMorgan explained in the parties'

October 16 joint letter to the Court [D.I. 101], these issues can be efficiently disposed of by

turning first to the applicability of the safe harbors, a determination that has already disposed of

every other avoidance claim that plaintiffs have asserted (other than claims alleging actual fraud,

to which the safe harbors do not apply).

---

[1]     In some cases, a preference claim can become part of the process of allowing and
disallowing creditor claims in bankruptcy by operation of section 502(d) of the Bankruptcy
Code, which requires disallowance of a creditor's claim if that creditor received a voidable
transfer and has not returned it. Thus, when section 502(d) applies, the claims-allowance process
necessarily requires complete resolution of "the preference issue," such that under familiar rules
of res judicata, "nothing remains for adjudication in a plenary suit." *Katchen v. Landy*, 382 U.S.
323, 334 (1966) (analyzing predecessor to section 502(d)). As this Court held in ruling on
JPMorgan's motion to withdraw the reference, however, section 502(d) is not applicable to this
adversary proceeding "because the parties executed a Collateral Disposition Agreement ('CDA')
so providing." 480 B.R. at 192.

WACHTELL, LIPTON, ROSEN & KATZ

Hon. Richard J. Sullivan
October 30, 2015
Page 5

But clearly none of the issues that this Court held it must address will be resolved — let alone will they *all* be *necessarily* resolved — in the claim objection proceedings pending in the bankruptcy court, which will determine whether JPMorgan appropriately calculated its recoverable losses under the agreements that governed derivatives, repurchase agreement, and securities lending transactions, as well as whether JPMorgan acted reasonably in liquidating securities collateral pledged by Lehman's broker-dealer subsidiary.[2]  Accordingly, the bankruptcy court lacks constitutional authority to finally adjudicate the Section 553 Claims.

In the joint letter, plaintiffs portrayed the remaining claims as raising statutorily "core" bankruptcy issues of whether JPMorgan's claim should be equitably subordinated and whether JPMorgan violated the automatic stay, making no mention of section 553.  *See* Joint Letter [D.I. 101] at 5.  But these statutorily "core" claims are dependent on a prior determination against JPMorgan on the Section 553 Claims.  As the Court stated in the September 30 Order, summary judgment on the equitable subordination claim was denied precisely because the Court had denied summary judgment on the "voidable preferences" claims.  Sept. 30 Order [D.I. 100] at 28.  Thus, unless plaintiffs succeed on their threshold Section 553 Claims — which, as

---

[2]    That the resolution of JPMorgan's derivatives and other claims filed against the estate does not subsume the issues raised by the Section 553 Claims is even more evident from the scope of the trial on the Section 553 Claims that plaintiffs envision in the joint letter.  In plaintiffs' view, this Court must hear wide-ranging evidentiary submissions as to custom and practice in the collateralization of derivatives transactions, as well as testimony from high-level JPMorgan executives and other evidence concerning whether JPMorgan purportedly acted with an "impermissible purpose of improving its position."  As we stated in the joint letter, JPMorgan believes that no such sweeping consideration of custom and practice is required, or even permissible, in determining the applicability of the Bankruptcy Code's safe harbors.  *See Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 336 (2d Cir. 2011).  But in any event, absolutely none of the issues that plaintiffs seek to raise will be decided by the bankruptcy court in determining the allowed amount of JPMorgan's claims against the Lehman estate.

Wachtell, Lipton, Rosen & Katz

Hon. Richard J. Sullivan
October 30, 2015
Page 6

discussed above, must be resolved in this Court — the so-called "core" equitable subordination

claim is moot.  Similarly, unless plaintiffs defeat the safe harbor defense with respect to the

Section 553 Claims, the claim for violation of the automatic stay necessarily fails, as it is subject

to the same safe harbor provisions as the Section 553 Claims.  *See* 11 U.S.C. §§ 553(a)(3), (b)

(incorporating safe harbors in section 362, the automatic stay provision).

   Inasmuch as the bankruptcy court cannot render final judgment on the Section

553 Claims, the interests of judicial economy and efficiency militate in favor of the claims

remaining in this Court rather than being referred to the bankruptcy court for a report and

recommendation.  In this somewhat unusual situation, this Court has considerably greater

familiarity with the claims asserted in this adversary proceeding than the current bankruptcy

judge, to whom the case was transferred shortly before the withdrawal of the reference.

   We are available at the Court's convenience should the Court wish to hear further

from the parties.

       Respectfully submitted,

       Paul Vizcarrondo, Jr.


cc:  Andrew J. Rossman, Esq.
  Joseph D. Pizzurro, Esq.