**quinn emanuel** trial lawyers | new york

51 Madison Avenue, 22nd Floor, New York, New York 10010-1601 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7282**

WRITER'S INTERNET ADDRESS
**andrewrossman@quinnemanuel.com**

November 6, 2015

<u>VIA ECF & E-MAIL</u>

Hon. Richard J. Sullivan
United States District Judge
United States District Court
for the Southern District of New York
40 Foley Square, Room 2104
New York, New York 10007
sullivannysdchambers@nysd.uscourts.gov

Re:   Lehman Brothers Holdings Inc., et al. v.
      <u>JPMorgan Chase Bank, N.A., Case No. 11-cv-06760(RJS)</u>

Dear Judge Sullivan:

We write on behalf of Plaintiffs in response to (i) this Court's Order dated October 23, 2015 (Dkt. No. 102) and (ii) JPMorgan's letter of October 30, 2015 (Dkt. No. 103) (the "JPMorgan Letter").

The Court's Opinion and Order dated September 30, 2015 (Dkt. No. 100) (the "September 30 Opinion") left six (6) of Plaintiffs' claims (the "Remaining Claims") for further adjudication.  The Remaining Claims assert that JPMorgan's post-petition setoff of approximately $1.9 billion in derivative claims against funds that LBHI transferred to JPMorgan on the eve of LBHI's bankruptcy filing (i) violated section 553 of the Bankruptcy Code (Counts XXVI, XXVIII and XXIX) (the "Section 553 Claims"), (ii) violated the automatic stay of section

quinn emanuel urquhart & sullivan, llp
LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE
LONDON | TOKYO | MANNHEIM | MOSCOW | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS

362 of the Bankruptcy Code (Counts XXXIII and XXXIV) (the "Stay Violation Claims"), and (iii) gives rise to a claim of equitable subordination under section 510(c) of the Bankruptcy Code (the "Equitable Subordination Claim").

The Second Circuit's *Orion* factors weigh decidedly in favor of referring the Remaining Claims to the Bankruptcy Court for final adjudication.[1] The Remaining Claims are statutorily and constitutionally core, and their resolution involves both the reconciliation of approximately two billion dollars of claims filed against the estates and the enforcement of rights created by, and existing solely under, the Bankruptcy Code. *See, e.g.*, *In re Calderon*, 497 B.R. 558, 565 (Bankr. E.D. Ark. 2013) (finding that claims for violation of the automatic stay are "so fundamental to our bankruptcy system . . . that they should, therefore, be viewed as 'public rights'") (alterations in original); *In re USDigital, Inc.*, 461 B.R. 276, 292 (Bankr. D. Del. 2011) (finding equitable subordination claim to be "a core proceeding under both the statute and the Constitution").

JPMorgan concedes that the Stay Violation and Equitable Subordination Claims are statutorily core claims susceptible to final disposition by the Bankruptcy Court. *See* JPMorgan Letter at 5-6 (Plaintiffs' "statutory 'core' claims are dependent on prior determination against JPMorgan on the Section 553 Claims"). And JPMorgan does not dispute that its indemnity claim for attorneys' fees seeks monetary recovery from the estate and therefore can and should be adjudicated by the Bankruptcy Court. *See, e.g.*, *In re Hudson*, 170 B.R. 868, 874 (E.D.N.C.

---

[1] *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993). The *Orion* factors are (1) whether the claim is core or noncore, (2) what is the most efficient use of judicial resources, (3) what is the delay and what are the costs to the parties, (4) what will promote uniformity of bankruptcy administration, (5) what will prevent forum shopping, and (6) other related factors." *Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) (quoting *In re Burger Boys, Inc.*, 94 F.3d 755, 762 (2d Cir. 1996) (paraphrasing *Orion*, 4 F.3d at 1101 )).

1994) ("Filing the counterclaim qualified as filing a claim which triggered the non-jury, public rights process of the allowance and disallowance of claims in bankruptcy."); *In re Schwinn Bicycle Co.*, 184 B.R. 945, 953 (Bankr. N.D. Ill. 1995) ("[B]y filing a counterclaim and seeking a piece of the disputed res, here the debtor's liquidated estate, Campbell placed herself within this Court's equitable powers."). Disputing it would be futile, as the indemnity claim clearly belongs in the Bankruptcy Court. *See* 11 U.S.C. § 157(b)(2)(B) ("Core proceedings include . . . . allowance or disallowance of claims against the estate"); *see also* JPMorgan's Proof of Claim No. 66462 against LBHI, p. 4 (claiming all amounts owed JPMorgan under the Clearance Agreement).

JPMorgan's lone argument against referring the Remaining Claims to the Bankruptcy Court is its assertion that the Bankruptcy Court lacks Constitutional authority to enter final judgment on the Section 553 Claims. According to JPMorgan, the Section 553 Claims are no different than the fraudulent transfer claims that this Court addressed in the September 30 Opinion in that they supposedly seek to augment the estate and exist independent of the Bankruptcy Code. JPMorgan is wrong.[2]

The primary consideration when evaluating a motion to withdraw the reference is whether the bankruptcy court has constitutional authority to enter final judgment on the claims at issue. *See In re Lyondell*, 467 B.R. at 719; *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y. 2011). As this Court explained, "a key question for the Court to consider is 'whether the action at issue stems from the bankruptcy itself *or* would

---

[2] As JPMorgan acknowledges, even if its *Stern* analysis were correct (and it is not), the Bankruptcy Court could still enter a final judgment if JPMorgan consented to it doing so. JPMorgan Letter at 2 (citing *In re Lyondell Chem. Co.*, 467 B.R. 712, 720 (S.D.N.Y. 2012)).

3

necessarily be resolved in the claims allowance process.'" *Lehman Bros. Holdings Inc. v. JPMorgan Chase Bank, N.A. (In re Lehman Bros. Holdings Inc.)*, 480 B.R. 179, 190 (S.D.N.Y. 2012) (quoting *Stern*, 131 S. Ct. at 2618) (emphasis added).  If either prong of the *Stern* test is satisfied, then the bankruptcy court has Constitutional authority to enter a final order.  *See In re Pali Holdings, Inc.*, 488 B.R. 841, 851 n.33 (Bankr. S.D.N.Y. 2013) (citing, *inter alia*, *Burns v. Dennis v. Se. Materials, Inc.*, 467 B.R. 337, 357 (Bankr. M.D.N.C. 2012)).  JPMorgan's letter only addresses one of the two prongs—whether the Section 553 Claims would necessarily be resolved in the claims allowance process—but is silent on the other prong of the *Stern* test.  Here, the Section 553 Claims stem from the bankruptcy itself and arise exclusively under the Bankruptcy Code.  The Bankruptcy Court can therefore enter a final judgment.  *See In re Kimball Hill, Inc.*, 480 B.R. 894, 905 (Bankr. N.D. Ill. 2012) ("*Stern* applies two disjunctive criteria to determine constitutional authority[:]  Under *Stern,* this court may enter final orders in a proceeding that stems from the bankruptcy itself . . . .").

Plaintiffs' Section 553 Claims would not exist outside of the bankruptcy.  *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1941 (2015) ("In *Stern,* the Court held that Article III prevents bankruptcy courts from entering final judgment on claims that seek only to 'augment' the bankruptcy estate ***and*** would otherwise 'exis[t] without regard to any bankruptcy proceeding.'") (quoting *Stern*, 131 S. Ct. at 2618) (emphasis added; alterations in original).  Unlike fraudulent transfer claims, there is no state law analog to claims under sections 553(a)(3) or 553(b).  Rather, Plaintiffs' 553 Claims are akin to preference claims, which can be finally adjudicated by the Bankruptcy Court.  *In re Gulf Coast Glass & Erection Co., Inc.*, 484 B.R. 685, 692 (Bankr. S.D. Tex. 2013) (explaining that section 547 preference claims "are available

only under bankruptcy law" and that "the Supreme Court's holding in *Stern v. Marshall* is not applicable to these types of claims").[3]

Moreover, the Section 553 Claims are distinguishable from fraudulent transfer actions for another, independent reason. JPMorgan's unilateral application of funds in satisfaction of its derivative claims occurred after the bankruptcy filing, without court approval, and in violation of the automatic stay. Similar to an action under section 549 to recover an unauthorized post-petition transfer, the Section 553 Claims do not seek to augment the estate; rather, they seek to restore wrongfully seized property of the estate for proper administration. *See In re Felice*, 480 B.R. 401, 427-28 (Bankr. D. Mass. 2012) (holding that bankruptcy court can enter a final judgment in an action to recover an unauthorized post-petition transfer since such action "stems from the bankruptcy itself") (quoting *Stern*, 131 S. Ct. 2618); *see also In re Ambac Fin. Grp., Inc.*, 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011) (noting whatever uncertainty *Stern* may have raised about the extent of a bankruptcy court's jurisdiction, there can be no question regarding a bankruptcy court's authority to enter final orders with respect to administration of property of the estate).

JPMorgan argues the Section 553 Claims do not implicate the claims reconciliation process, citing to the Collateral Disposition Agreement ("CDA") and arguing it rendered section 502(d) of the Bankruptcy Code inapplicable to this adversary proceeding. JPMorgan Letter n. 1.[4] Contrary to JPMorgan's assertions and as demonstrated above, however, the Section 553

---

[3] *See also In re MCK Millennium Ctr. Parking, LLC*, 532 B.R. 716, 720 (Bankr. N.D. Ill. 2015) ("[T]he Court determines that it has both constitutional and statutory authority to enter a final judgment order on Plaintiff's preference claims.").

[4] This is contrary to the terms of the CDA itself, which is explicitly litigation neutral and reserves all parties' rights under applicable law. CDA § 5(a).

Claims do implicate the claims reconciliation process.  And, to the extent the CDA governs the reconciliation of JPMorgan's claims based on the results of this adversary proceeding (as JPMorgan asserts), the CDA expressly provides that "the Bankruptcy Court shall have and retain exclusive jurisdiction to enforce the terms of this Agreement and to determine any claims or disputes which may arise or result from, or be connected with, this Agreement . . . ."  CDA § 12. Regardless of whether section 502(d) or the CDA applies, the Bankruptcy Court has adjudicatory authority.

Uniformity of bankruptcy administration also supports referral of the Remaining Claims to the Bankruptcy Court.  *See, e.g.*, *Lehman Bros. Holdings Inc. v. Intel Corp.*, No. 14 Civ. 293(JGK), 2014 WL 1877937 at *3 (S.D.N.Y. May 10, 2014) ("Courts in this District have also emphasized intra-case uniformity, and concluded in analogous contexts that because the Lehman bankruptcy involves numerous disputes involving derivatives contracts, uniformity is clearly served by leaving all those disputes in the hands of single court") (citation omitted). In addition to overseeing the reconciliation of billions of dollars in derivatives claims, the Bankruptcy Court has also expended considerable time and energy reviewing challenges under section 553 of the Bankruptcy Code to the alleged setoff rights maintained by Citibank, N.A. with respect to its derivatives claims.

Finally, the Bankruptcy Court's familiarity with application of the safe harbors further compels referral.  JPMorgan's "sole grounds" in opposing the Section 553 Claims (Counts XXVI, XXVIII) are that its actions are protected by the safe harbor provisions.  *See* September 30 Opinion at 26.  Bankruptcy courts are regularly called upon to determine the application and scope of the safe harbors.  *See, e.g.*, *In re Arbco Capital Mgmt., LLP*, 498 B.R. 32 (Bankr. S.D.N.Y. 2013) (Chapman, J.) (addressing application of safe harbor to constructive fraudulent

transfer and preference claims).  Consistent with prior practice in this adversary proceeding, the Bankruptcy Court should address JPMorgan's safe harbor defenses to the Remaining Claims.

As the Bankruptcy Court held, and this Court acknowledged, the application of the safe harbors to protect the challenged setoffs "is a highly fact specific inquiry."  September 30 Opinion at 27 (quoting *In re Lehman Bros. Holdings Inc.*, 469 B.R. 415, 454 (Bankr. S.D.N.Y. 2012)).  Consistent with both the Bankruptcy Code and the Constitution, the Bankruptcy Court should make the factual findings and legal conclusions concerning the Section 553 Claims. Because JPMorgan has conceded that the Bankruptcy Court has authority to adjudicate the other Remaining Claims, Plaintiffs respectfully request that the Court refer all of the Remaining Claims to Judge Chapman for trial.[5]

Respectfully submitted,

*/s/ Andrew J. Rossman*

Andrew J. Rossman

cc:   Joseph D. Pizzurro, Esq.
      Paul Vizcarrondo, Esq.

---

[5]  If the Court concludes that the Bankruptcy Court lacks constitutional authority to issue a final judgment with respect to any of the Remaining Claims, Plaintiffs respectfully request that the Court refer the Remaining Claims to the Bankruptcy Court with instructions to issue a report and recommendation.  As this Court recognized, the Bankruptcy Court "has the authority to issue a report and recommendation as to those claims for which it otherwise lacks the constitutional authority to enter final judgment."  *In re Lehman Bros. Holdings Inc.*, 480 B.R. at 194; *see also Executive Benefits Ins. Agency v. Arkinson*, 134 S. Ct.  2165, 2173 (2014) (holding that Bankruptcy Courts have authority to issue proposed findings of facts and conclusions of law with respect to so-called *Stern* claims).